# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #043

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **18th day of September, 2018**, are as follows:

**PER CURIAM**:

2017-B-1930        IN RE: PAUL E. BROWN

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Paul Eugene Brown, Louisiana Bar Roll number 1736, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that all but ninety days of this suspension shall be deferred, subject to a two-year period of probation and the other conditions set forth in this opinion. Any failure to comply with these conditions or other misconduct during the probationary period may be grounds for making the deferred portion of the suspension executory or imposing other discipline as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

WEIMER, J., dissents for the reasons assigned by Crichton, J.
HUGHES, J., dissents for the reasons assigned by Crichton, J.
CRICHTON, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2017-B-1930

IN RE: PAUL E. BROWN

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Paul E. Brown, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

In 2012, respondent was involved in an automobile accident that caused injuries to the driver of the other vehicle. Respondent was under the influence of a prescription drug, butalbital with codeine, at the time of the accident. Respondent was arrested and charged with second offense DWI,[1] careless operation of a motor vehicle, obstruction of justice, and vehicular negligent injuring.

In August 2013, respondent pleaded no contest to DWI, careless operation, and vehicular negligent injuring. For each count, he was sentenced to serve six months in the parish jail, with credit for time served; the sentence was suspended and respondent was placed on unsupervised probation for six months with conditions, including payment of a fine plus costs and completion of community service.

---

[1] Respondent was first arrested for DWI in 2003. He was placed on probation in connection with that offense. In 2004, the Terrebonne Parish District Attorney's Office *nolle prosequied* the charges. The ODC was not aware of this arrest.

Following his conviction, the ODC referred respondent to the Judges and Lawyers Assistance Program ("JLAP") for an evaluation. In February 2014, respondent was evaluated by a clinical psychologist, Alexandra Casalino, Psy.D. Dr. Casalino expressed concern about respondent's long history of prescribed opioid usage beginning in 1996 for chronic headaches, TMJ, and neck pain, and his use of psychotropic medications (Prozac) for sleep disturbances and depressive experiences. Respondent denied abusing prescription drugs and indicated to Dr. Casalino that he did not believe he had a problem. Based on the information gathered by Dr. Casalino, she concluded that a definitive diagnosis of substance abuse or dependence could not be made, and she recommended that respondent undergo an inpatient professional assessment at a JLAP-approved facility.

In April 2015, respondent was admitted to Palmetto Addiction Recovery Center for a three-day inpatient evaluation. According to the April 30, 2015 discharge report, respondent "easily met criteria" of the DSM-IV for diagnoses of sedative/hypnotic use disorder, moderate to severe, and opiate use disorder, moderate to severe. He used larger amounts of opiates and sedative/hypnotics over a longer time than intended, and was unable to cut down or stop using over the past several years. He described social and occupational dysfunction related to his drug usage and used while engaged in physically hazardous activities (driving). He also used opiates and sedative/hypnotics with a concurrent diagnosis of hypertension and while on medication for hypertension. Finally, the report indicated that respondent had developed a tolerance and experienced mild withdrawal symptoms from his substance use. Accordingly, Palmetto recommended that respondent complete a long-term inpatient treatment program followed by the execution of a five-year JLAP recovery agreement. Palmetto also recommended that respondent taper off all controlled medications under medical supervision and that he complete inpatient

treatment "before consideration for return to the practice of law." Respondent declined to comply with Palmetto's recommendations.

## DISCIPLINARY PROCEEDINGS

In September 2014, the ODC filed formal charges against respondent, alleging that his conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct. Respondent answered the formal charges and essentially admitted his misconduct, but requested a hearing in mitigation.

### Mitigation Hearing

The hearing committee conducted the mitigation hearing over the course of two days in August and November 2016. Respondent introduced documentary evidence at the hearing, including: (1) two letters, dated June 13, 2014 and August 3, 2016, written by Todd Arcement, D.C., a chiropractor who treated respondent for twenty years; (2) two letters, dated May 10, 2014 and August 1, 2016, written by Michael Marcello, M.D., respondent's primary physician who treated him for more than thirty years; (3) the report prepared by Dr. Casalino following her evaluation of respondent in February 2014; and (4) the report prepared by Jay Weiss, M.D., the medical director of Palmetto, following respondent's inpatient evaluation in April 2015.

Respondent testified that he has had a long-standing issue with chronic pain. He has had headaches since he was a child, and in law school he developed TMJ. In 1996 he suffered a serious neck injury after being hit by a drunk driver who had run a stop sign. As a result, respondent had problems with headaches and neck pain.

3

Respondent testified that ten years prior to that accident, he was rear-ended in another automobile accident, but noted that it "wasn't much of anything." Then, in 2008, respondent was hit by a car while stopped at a red light. Finally, in 2015, respondent was rear-ended while sitting in traffic. According to respondent, these accidents aggravated his condition.

Respondent testified that Dr. Marcello and Dr. Arcement worked together to manage his pain. Along with physical therapy and chiropractic care, respondent tried "just about every kind of medication" to alleviate his problems. Then, in 2012, he was given butalbital with codeine to help relax his muscles and help with the pain. Respondent indicated that he took his medication as prescribed. Respondent testified that the last time he took this medication was the night before the August 2012 accident; however, he also had been experiencing vertigo and high blood pressure, which he felt were more likely causes of the accident than the medication. Respondent testified that he has since discontinued the medication and has received several epidural steroid injections. Respondent testified that since receiving the injections in May, June, and July 2016, he has not taken any pain medication, muscle relaxers, or anything else. Respondent testified that he "got relief from the very first shot and then it got better the second shot and then the third." Due to the success of these shots, respondent testified that he now only takes blood pressure medicine.

Respondent denied that he has a drug problem warranting substance abuse treatment or the requirement that he execute a JLAP agreement. Respondent emphasized that in the past he has taken only pain medication prescribed to him by "a doctor that knew my history for 30 years. And I took the medication as prescribed." Moreover, he reiterated that as of 2016, he is no longer taking any pain medication. Respondent testified that he is sober at this time and does not need any help in staying sober, as recommended by the professionals at Palmetto.

4

*Hearing Committee Report*

Following the hearing, the hearing committee determined that for an extended period of time, respondent has been dependent upon, if not addicted to, opiates and sedatives, for which he had developed a high tolerance. His addiction was such that he had developed withdrawal from the medications. While recognizing that respondent has recently made vast improvements in limiting his prescription drug usage, the committee nonetheless recommended that respondent execute a five-year JLAP recovery agreement as a condition of a fully deferred one year and one day suspension.

Respondent filed an objection to the sanction and conditions recommended by the hearing committee.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee erred in finding that respondent had experienced withdrawal symptoms. Additionally, the board noted that respondent stopped using pain medication several months prior to the hearing and has had success with alternative treatments to manage his pain.

Therefore, the board recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to a two-year period of probation. Given the change in circumstances since respondent's last evaluation at Palmetto in 2015, the board also recommended that he undergo an updated substance abuse evaluation at a JLAP-approved facility and comply with whatever conditions are recommended pursuant to that evaluation.

The ODC filed an objection to the board's recommendation, and accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b). The ODC noted that the board had failed to set forth a time period

5

within which respondent was required to undergo the updated evaluation, and that the recommended two-year probationary term failed to allow for an increased term of supervision should such be required following the evaluation. In his brief to this court, respondent also objected to the board's recommendation insofar as it requires him to undergo another substance abuse evaluation. He claimed that since the first evaluation at Palmetto in 2015, he has pursued alternative treatments for his chronic pain and is free of using opiates.

*Interim Order of the Court*

Following oral argument, we issued an interim order on May 14, 2018 which provided, in pertinent part:

> IT IS ORDERED that within thirty days of the date of this order, respondent shall submit to an updated substance abuse evaluation at a facility approved by the Judges and Lawyers Assistance Program. Following the evaluation, the parties shall cause a copy of the report of the evaluation to be filed in this court as soon as practicable.
>
> IT IS FURTHER ORDERED that the record of this matter shall be held open pending the filing of the report of the evaluation. The parties may file supplemental briefs addressing the report within ten days of the filing thereof.

On June 11, 2018, respondent submitted to a three-day evaluation at the Professionals' Wellness Evaluation Center ("PWEC") in Alexandria, a facility approved by JLAP. On June 20, 2018, PWEC released its report, indicating that respondent's hair test was positive for opiates, despite his claim that he was no longer taking opioid pain medication, and that respondent has an untreated substance use disorder which will require long-term inpatient treatment at a JLAP-approved facility.

On June 29, 2018, the ODC forwarded the PWEC report to this court. By order dated July 5, 2018, we formally received the report into evidence. Thereafter, both parties filed responses to the PWEC report.

In its response, the ODC suggests that respondent has not been truthful concerning his continuing use of prescription drugs and that a fully deferred suspension is no longer appropriate in light of his untreated substance abuse issues. Rather, the ODC urges the court to impose a one year and one day suspension, with no portion thereof deferred.

In his response, respondent states that he suffered severe pain after falling in his kitchen in January 2018, causing injuries to his head, neck, and back. To relieve the pain, he took the remains of an old prescription for hydrocodone that he had in his medicine cabinet. However, respondent represents that he did not disclose his use of hydrocodone when he was evaluated at PWEC in June 2018 because he did not recall this accident; instead, his memory of the accident was only triggered when he received the results of his hair test, which was positive for recent use of hydrocodone. Respondent concludes that he is willing to undergo regular "stand alone" monitoring for drug and alcohol use, but that he is not in need of inpatient substance abuse treatment.

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re:*

7

*Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record of this matter supports a finding that respondent pleaded no contest to first offense DWI, careless operation of a motor vehicle, and vehicular negligent injuring. This conduct is a violation of the Rules of Professional Conduct as charged.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent negligently violated duties owed to the public and the legal profession, causing potential and actual harm. The baseline sanction for this type of misconduct is suspension.

There are several mitigating factors supported by the record, including the absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems, character and reputation, remorse, and the imposition of other penalties or sanctions. Moreover, there is no evidence to indicate that any client was adversely impacted by respondent's conduct. In aggravation, respondent has substantial experience in the practice of law (admitted 1983) and has engaged in illegal conduct.

In *In re: Baer*, 09-1795 (La. 11/20/09), 21 So. 3d 941, we stated the following with respect to appropriate sanctions for DWI offenses:

8

> We have imposed sanctions ranging from actual periods of suspension to fully deferred suspensions in prior cases involving attorneys who drive while under the influence of alcohol. **However, as a general rule, we tend to impose an actual suspension in those instances** in which multiple DWI offenses are at issue, as well as in cases **in which the DWI stems from a substance abuse problem that appears to remain unresolved.** [Emphasis added.]

In this case, respondent, like a growing number of people in our country, developed an addiction to medications that were validly prescribed by his physician to relieve severe and chronic pain. As shown by the PWEC evaluation, he clearly requires long-term inpatient treatment to successfully address this unfortunate disease, but thus far he has been reluctant to agree to participate in such treatment. In order to fulfill our role of ensuring the public is protected, we conclude it is necessary to fashion a suspension which is responsive to respondent's current misconduct and provides him with an adequate opportunity to address his substance abuse issues so he may safely practice law in the future.

Accordingly, we will suspend respondent from the practice of law for one year and one day. In view of the mitigating factors, we will defer all but ninety days of this suspension, subject to a two-year probationary period and with the condition that during the active period of his suspension, respondent shall enter into long-term inpatient treatment at a JLAP-approved facility, as recommended by PWEC. Thereafter, he shall comply with any and all recommendations made by the treatment facility and JLAP, including, but not limited to, entering into a JLAP recovery agreement. Should respondent fail to comply with any of these conditions or commit any misconduct during the probationary period, the ODC shall have the right to file a summary petition in this court requesting that the deferred portion of respondent's suspension be made immediately executory, or requesting other relief as appropriate.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Paul Eugene Brown, Louisiana Bar Roll number 1736, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that all but ninety days of this suspension shall be deferred, subject to a two-year period of probation and the other conditions set forth in this opinion. Any failure to comply with these conditions or other misconduct during the probationary period may be grounds for making the deferred portion of the suspension executory or imposing other discipline as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**09/18/18**

# SUPREME COURT OF LOUISIANA

## NO. 17-B-1930

## IN RE: PAUL E. BROWN

*ATTORNEY DISCIPLINARY PROCEEDINGS*


**WEIMER, J.**, dissents for reasons assigned by Justice Crichton.

**SUPREME COURT OF LOUISIANA**

**No. 2017-B-1930**

**IN RE: PAUL E. BROWN**

**ATTORNEY DISCIPLINARY PROCEEDING**

**Hughes, J., dissents for the reasons assigned by Crichton, J.**

**SUPREME COURT OF LOUISIANA**

**No. 17-B-1930**

**IN RE:  PAUL BROWN**

**ATTORNEY DISCIPLINARY PROCEEDING**

**CRICHTON, J., dissents and assigns reasons:**

I dissent in what I believe is a premature disposition of respondent's case.  The majority's per curiam ignores respondent's prayer for an opportunity to be heard as to the January 2018 incident and the June 2018 PWEC report.  Specifically, in my view, respondent should be allowed the opportunity to confront and cross-examine the methodology and results of the test as well as an opportunity to provide an explanation under oath as to these issues.  Anything less offends fundamental due process, which we must extend to all parties, including lawyers.  Accordingly, in lieu of immediately implementing sanctions, I would instead remand the matter for an evidentiary hearing.